JACOB HALFACRE et al. *v.* W. D. DOBBINS.

PRACTICE — ADMINISRATOR'S BONDS — REMEDY THEREON. — A bill in equity will not lie against an administrator and the sureties on his bond for a *devastavit* or misappropriation of the assets of his intestate. In such cases the remedy is at law upon the bond.

APPEAL from the Chancery Court of Winston County. Hon. T. C. LYON, Chancellor.

This was a bill in equity filed by the appellee as a judgment

action of H. L. Halfacre, deceased, and for such other creditors as might come in and be made parties against Jacob Halfacre, the administrator and the sureties on his bond as such administrator, appellants.

The bill is against the appellants as principal and sureties, and seeks a recovery against them upon the administration bond, upon the ground of *devastavit*, and charges a large 'balance due by the administrator as shown by his annual accounts returned and of record, and from proceeds of sales of property not accounted for. It shows a judgment at law for the amount due appellee against the administrator of the intestate, and an execution issued thereon and returned *nulla bona*, and alleges in substance, that the administrator had in his hands assets sufficient to discharge said judgment, but has failed to apply them to its payment. The prayer is for an account, and that the administrtor be held liable to complainant for a *devastavit*, and for a decree against the administrator and the sureties on his bond, etc.

To this bill the appellants filed a demurrer which the record shows was overruled ; but there is no demurrer in the record and the grounds of it are not known, and the appellants answered the bill, etc.

On the final hearing the court decreed that the complainant recover of the administrator and sureties on his bond the amount of his judgment at law and costs, etc. From this decree appellants appealed and assigned as error :

1. The court erred in overruling the demurrer to the bill ; the same should have been sustained, and the bill dismissed.

2. That the court erred in not allowing the ——— exception of appellants to the account and report of the commissioner appointed to state and report an account of the amount due by appellant, as administrator, for which he was chargeable; and in charging said administrator for the claim of R. D. Johns, and in holding that the facts appearing of record made said administrator liable for a *devastavit* for not having collected such claim as assets of his intestate.

3. That the court erred in taking jurisdiction, and in rendering a final decree against the appellants for the amount as stated in said decree, upon the case as made by the pleadings and proof.

*A. H. Handy,* for appellants, argued the following points, orally :

1. The court below had no jurisdiction to maintain the bill: 1. As to the *general* jurisdiction of a court of equity, it is conferred by the present constitution in these words: "full jurisdiction in all matters in equity." Art. VI, sec. 16. This consisted of matters of general equity cognizance, as recognized and practiced in this state, at the time of the adoption of the constitution ; and of such special matters of jurisdiction as had been conferred by statute on our chancery courts *before* the adoption of the constitution, and were, *at the time of its adoption,* recognized and practiced upon as subjects of equity jurisdiction. Green v. Creighton, 10 S. & M., 160, 163, in which jurisdiction in equity is denied even against the administrator alone. Buckingham v. Owen, 6 S. & M., 502, 505-6, which was a bill by a judgment creditor against sureties on administration bond, for *devastavit* by administrator, against whom judgment at law had been obtained. Jones v. Coon, 5 S. & M., 751; Neylans v. Burge, 14 ib., 204; Searles v. Scott, ib., 95, 98.

And even in cases where the aid of equity was invoked to set aside fraudulent settlements made in the probate court by administrators, it was settled, in the two last cases cited, that the jurisdiction in equity extended no further than to *set aside* the settlement for fraud, and then to leave the matter of further settlement by the administrator, and proceedings incident thereto, to the probate court, which had exclusive jurisdiction thereof. These cases settled the doctrine, that cases like this are purely *legal* in their nature, and not cognizable in equity. It was also settled that the legislature had no power to confer jurisdiction of matters purely at law, upon courts of equity. Farish v. State, 2 How. (Miss.), 826 ; Freeman v. Guion, 11 S. & M., 58, 65.

An exception to the general rule, that courts of equity are restricted to the exercise of such jurisdiction as embraced only the general subjects pertaining to that court, as recognized and practiced as such, is admitted, where, by act of the legislature, such powers are enlarged in a particular respect, and such additional matters come into practice as subjects of equity jurisdiction, and afterwards a new constitution is adopted, giving general jurisdiction in equity to the court of chancery, as was done by our constitution of 1832. In such case, it has been held, that such additional matters of jurisdiction conferred by statute, on the court, *before the adoption of this constitution and practiced at the time of its adoption*, as subjects of equity jurisdiction, will be taken to be embraced in the general terms of the new constitution, and to become matters of equity jurisdiction within the meaning of the grant in the constitution. Servis v. Beatty, 32 Miss., 84, 85.

But this rule does not embrace this case; because, at the time of the adoption of the present constitution, the statute under which jurisdiction in this case is claimed, had not been passed, and no such jurisdiction was practiced in courts of equity.

The cases above cited were decided with reference to the provisions of the constitution of 1832. But exactly the same words are transcribed in the present constitution, and should now receive the same construction, upon the familiar principle that, in adopting the same provisions, on the subject, contained in the old constitution, they must be held to have been *adopted with the interpretation* given to them by the courts, and in force when the present constitution was adopted. It is true, that the rule of general jurisdiction in equity of matters of administrators' accounts, and of remedies upon their bonds, has been extended much beyond that which has prevailed in the courts of this state; and this extended jurisdiction has been sanctioned by the supreme court of the United States, in the cases of Green v. Creighton, 23 How., 106; and Payne v. Hook, 7 Wall., 425. It is questionable whether the rules held in these cases would justify the jurisdiction

in this case,.which has no feature of equity cognizance, not even the necessity for an account; but is purely *an action in equity* against the administrator and his sureties *on his bond* for a mere *devastavit*, alleging assets in his hands, the recovery of the complainant's judgment, return of *nulla bona*, and failure to pay the judgment. But, be this as it may,. these rules have no force in the courts of this state, whose constitution and laws, in cases depending in its own courts, are "a law to ourselves," and must be the rule of action therein, independently of the decisions of the supreme court of the United States, in the absence of any question as to their validity with reference to the constitution of the United States. With that exception, we are bound by our constitution and laws, not in conflict with the federal constitution, and by the interpretation of them by our courts. Story Confl. Laws, § 618, b.

2. The second branch of jurisdiction of our courts of equity is conferred by the present constitution, in the identical words of the constitution of 1832, giving it to the probate courts, thus of "all matters testamentary and of administration." Art. 4, sec. 18, 1832. The present constitution adopting the same terms of grant as that of 1832, must be taken as adopting the former provisions, *with the interpretation* given to them by the courts, and thereby to have incorporated it as so interpreted, as above stated. When the present constitution was adopted, it was perfectly settled in our courts that the probate court, under the same terms of jurisdiction, had no power to render a decree upon an administration bond against the administrator and sureties, but that they must be sued at law, especially the sureties, after the liability of the administrator had been fixed by proper proceedings against him. Green v. Tunstall, 5 How., 651; Green v. Creighton, *supra;* Dinkins v. Bailey, 23 Miss., 284.

And our present chancery courts, in being vested by the present constitution with the same identical powers, in this respect, formerly vested in the probate courts, exercise only such powers as

were appropriate to the probate courts in this particular. This jurisdiction is simply transferred from one court to another under a different name.

The chancery courts created by the present constitution, exercise two distinct branches of jurisdiction : one in "all matters in equity ; " and the other of "all matters testamentary and of administration." But the distinction between the two branches of jurisdiction was in no wise altered as to the subjects proper upon which each was to be exercised ; and each branch is to be administered as distinct from the other, and by rules and modes appropriate to each. 44 Miss., 429 ; ib., 304; Troup v. Rice, at last term not yet reported. It is therefore manifest that by neither of the above clauses of the present constitution was the jurisdiction conferred to entertain this bill.

3. The jurisdiction was not given by Code 1871, § 976. 1. That provision is *prospective*, and can only apply to bonds thereafter to be executed. Its language respects future bonds —"shall have been executed." The bond here sued on was executed before the statute was enacted. 2. Its terms apply to a " proceeding " *in the course of the administration*, and cannot properly be applied to the bond of an administrator which is merely preliminary to the granting of administration. It is not to be presumed that it was intended to apply to sureties on such bond, since it was the settled rule that there was no privity between them and the court; that they could not be called to account then, as they bore no official relation to the court which could give it jurisdiction of them. Tunstall v. Green, 5 How. (*supra*) ; Lipscomb v. Postell, 38 Miss., 488. This construc. tion is sanctioned by Bernheimer v. Calhoun, 44 Miss., 429, decided with reference to this provision.

4. But the provisions of this statute are clearly unconstitutional. 1. Upon the reasons above stated, as to the jurisdiction of the court. 2. As to the sureties, it impaired the obligation of their contract.

That contract was, that the administrator shall perform his

proper duties, and pay over to the persons entitled, any moneys which shall be adjudged by the proper court to be due in his administration; and, in default thereof, that the sureties shall pay the amount.

This was the essence of their contract, and until the liability was fixed judicially by an account taken against the principal in the probate or chancery court, no suit could have been instituted against them therefor. Tunstall v. Green, *supra*.

This fixing of the administrator's liability was a *condition precedent* to the sureties' liability to suit; and this essential right for their protection is taken away by this statute.

Nor is it merely a matter pertaining to the *remedy*, but it goes to the essence of the sureties' rights. Musgrove v. Railroad, this term; and it impairs the rights of the sureties, by destroying the conditions precedent to their obligation to pay, existing at the time they entered into the contract. Coffman v. Bank of Kentucky, 40 Miss., 31–32.

*Frank Johnson*, for appellee:

1. The constitution of 1869 provides: "Chancery courts shall be established in each county in the state with full jurisdiction in all matters in equity and of divorce and alimony; in matters testamentary and of administration, in minor's business and allotment of dower, and in cases of idiocy and lunacy, and persons *non compos mentis*." Art. VI., sec. 16. The probate court was abolished; and in addition to equity powers, the chancery court was given jurisdiction in all "matters testamentary and of administration." Under the statutes in force prior to the adoption of the code of 1871, the probate court could not render a decree against the sureties on an administrator's bond, and enforce it by final process, nor had the court of chancery this jurisdiction.

In Washburn v. Phillips (decided in 1846), 6 S. & M., 431, the court held that the probate court could not enforce the bond, but that it should be sued on at law.

It may be fairly concluded that the *probate court* did not have

this jurisdiction, for the reason that in regulating the general powers and jurisdiction given in general terms by the constitution, the legislature saw fit to require these bonds to be sued on at law.

The *chancery court* did not have the power to proceed against the obligors in these bonds for an account, and enforce their liability by decree, because the constitution gave the general jurisdiction in "matters of administration" to the probate court, and the statutes in providing the machinery for carrying out these powers, contemplated an account in the latter court, and a *suit at law* on the bond under the *direction of the probate court*, and a final application of the proceeds of the judgment when recovered, to be made by the probate court. The jurisdiction is broadly given in all "matters testamentary and of administration."

As precisely the same terms were used by the former constitution in defining the jurisdiction of the probate court, it is important to ascertain the meaning of these terms as construed by former adjudications.

It is apparent that it was left in a great measure to the legislature to define the boundaries of these general powers, to prescribe what were properly "matters testamentary and of administration," and to provide the modes and forms of proceedings, and the remedies to be administered by the court.

As a consequence, the probate court had certain common law powers, it had equity powers, and exercised certain functions of the ecclesiastical courts. It was composite in its structure; and this structure was erected by the legislature; and these different powers were provided by statutes, under the general jurisdiction as defined by the constitution. In Carmichael v. Browder, 3 How., 253, it was *held* that the constitution did not confer a "limited jurisdiction," but a general jurisdiction over *all the subjects* mentioned. In Servis v. Beatty, 3 George, 52, the question was the constitutionality of a statute which gave the probate court, in effect, the power of enforcing the specific performance of contracts

respecting the sale of land by the decedents. The argument at the bar was strongly pressed that the constitution had given to the chancery court, equity jurisdiction, and to the court of probate, jurisdiction in "matters testamentary and of administration," and that it was incompetent for the legislature to confer equity powers on the latter tribunal. The court held the statute to be constitutional, upon the ground that it was left in a great measure to the legislature to define the scope of the constitutional terms; and that the subject of the suit might well be said to belong properly to the administration of estates. This is an instance where a statute conferred equity jurisdiction on the probate court. Again in Smith v. Craig 10, S. & M., 450, the statute of December, 1833, which gave the court the power to partition land where the interest of a deceased joint tenant, tenant in common, or coparcener descended to his heirs, was held to be constitutional. In this instance, a common law power was conferred on the probate court. This remedy previously had existed at common law, by writ of partition. See, also, 44 Miss., 212; Harrington v. Wofford, 46 id., 31. In Root v. McFerrin, 8 Geo., 17, it was said that the power of the court over the lands of a decedent was not given in terms by the constitution, nor did it exist inherently in the court, but was conferred by statute. The last case is cited in support of the proposition that it was necessarily left to the legislature to define the jurisdiction and to provide particular remedies, in giving effect to the powers granted generally by the constitution.

In Farish v. The State, 4 How., 170, a statute which gave the chancery court jurisdiction over all suits against the state, and clearly conferred *common law powers* on the court, was held to be constitutional. The court said that "it was left to the legislature to define the jurisdictions of the several courts," and whenever the legislature creates new subject of chancery jurisdiction, it becomes immediately one of those "matters of equity" of which the court has full jurisdiction by the constitution.

2. The jurisdiction can be maintained under the clause of the constitution which gives jurisdiction to the court " in all matters of equity." All that has been said as to the nature of the bond and the character of the obligation of the principal and sureties, is applicable to this view of the case. The administrator is but a trustee, executing a trust under the direction of the court.

On general principles of equity jurisprudence, I submit the power to enforce the bond would be properly incidental to the administration of the fund and subject matter. Payne v. Hook, 7 Wallace, 425; 23 How., 108; Pratt v. Northam, 5 Mason, 105; 2 Story Eq. Jur., 1287; Moore v. Armstrong, 9 Porter, 697; Moore v. Wallis' heirs, 1 Marsh, 488; Carrol v. Connet, 2 J. J. Marsh, 198.

3. It is insisted that under the law in force when the bond was executed, a preliminary proceeding for an account against the administrator was necessary before the sureties could be sued on the bond; and this became in effect a condition precedent to the right of action against the sureties. This objection rests on a mistaken view of the law. Art. 123, p. 435, Code, 1857, expressly provides that a suit in the first instance might be brought against the sureties without first proceeding against the administrator. This statute is conclusive on this point.

4. The appellants were deprived of no constitutional right in this proceeding.

It is not the trial by jury, but the *right* of trial by jury, that is declared inviolate. Lewis v. Garrett's adm'r, 5 How., 434. The statute (§ 976) does not deny the parties the right of trial by jury. Under § 976 and § 1032, they could have had a jury trial. A statute which does not *prohibit* a jury trial is not unconstitutional. Parsons v. Bedford, 3 Pet., 447; 1 Randolph R., 1; 1 Washington R., 357. The right of trial by jury may be waived by voluntarily submitting to the jurisdiction of the court, and not demanding a jury, certainly, in a case where the court, at the instance of the party, can award a trial by jury. Logwood v. Huntsville Bank, Ala., R., 23; 5 How., 434; Ratcliff v. Ratcliff, 12

S. & M., 141; I respectfully submit that the decree of the chancellor should be affirmed.

SIMRALL, J., delivered the opinion of the court:

The question presented by this appeal, and which was well argued at the bar, is, whether a bill can be sustained by a judgment creditor against the administrator, and the sureties on his bond, on the suggestion of a wasture or misapplication of the assets, or a withholding them from creditors without any just reason. It is not controverted, that as jurisdiction was divided among the several courts, under the constitution of 1833, the remedy of the complainants would have been at law upon the administrator's bond. In Smith v. Everett, decided at this term, we have held in principle that such is the remedy under the present arrangement of jurisdiction of the courts. That case is decisive of this.

It would follow, therefore, that the decree must be reversed, and judgment in this court, dismissing the bill, but without prejudice to the complainant's rights in any other proper suit.